IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Barbara M.,[1]

      Plaintiff,

  v.

**NANCY A. BERRYHILL**,
Acting Commissioner of Social Security,

      Defendant.

Civ. No. 6:17-cv-01210-MC

**OPINION AND ORDER**

**MCSHANE, Judge**:

    Plaintiff Barbara M. brings this action for judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

    The issues before this Court are whether: (1) the Administrative Law Judge ("ALJ") erred in finding Plaintiff's right knee osteoarthritis was "non-severe"; (2) the ALJ gave clear and convincing reasons for rejecting Plaintiff's testimony; (3) the ALJ erred in disregarding the lay witness' testimony; and (4) the Commissioner met her burden of proving that Plaintiff can perform "other work" in the national economy.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case and any immediate family members of that party.

1 – OPINION AND ORDER

Because the ALJ articulated sufficient reasons supported by substantial evidence in her evaluation of the respective evidence and, to the extent that she erred, such errors were harmless, the Commissioner's decision is AFFIRMED.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff applied for DIB and SSI on April 29, 2014, alleging disability since September 22, 2012. Tr. 168, 175. Both claims were denied initially, tr. 107, and upon reconsideration, tr. 118, 121. Plaintiff timely requested a hearing before an ALJ, tr. 124, and appeared before the Honorable Katherine Weatherly on February 12, 2016, Tr. 39. ALJ Weatherly denied Plaintiff's claim by a written decision dated April 8, 2016. Tr. 18. Plaintiff sought review from the Appeals Council and was denied on May 31, 2017, tr. 1, rendering the ALJ's decision final. Plaintiff now seeks judicial review of the ALJ's decision.

Plaintiff was 50 years old at the time of her alleged disability onset, tr. 32, and 53 at the time of her hearing, *see* tr. 39. Plaintiff is a high school graduate and worked as a home attendant, dishwasher, nurse's assistant, cashier, and fast food worker. Tr. 59, 212. Plaintiff alleges disability due to congestive heart failure, chronic obstructive pulmonary disease, end-stage osteoarthritis in the right knee with "bone-on-bone" degenerative changes, type II diabetes mellitus, hypertension, obesity, and depressive disorder. Pl.'s Am. Br. 1, ECF No. 15.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## **DISCUSSION**

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests on the claimant for steps one through four, and on the Commissioner for step five. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is considered disabled. *Id.*

## I. Plaintiff's Right Knee Osteoarthritis

Plaintiff argues that the ALJ erred in finding that her right knee osteoarthritis was non-severe. Pl.'s Am. Br. 11, ECF No. 15. Plaintiff points to Dr. Randall Jennings', M.D., February

2016 report, *id.*; *see* tr. 671, and other records Plaintiff submitted to the Appeals Council after the ALJ's decision, Pl.'s Am. Br. 12–14, ECF No. 15; *see* Pl.'s Am. Br. Ex. A., 4–5, 41, 42–43, 44–46.

A severe impairment is an "impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). "An impairment is not severe if it is merely a 'slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Social Security Ruling 96-3p, 1996 WL 374181).

Based on the lack of objective medical evidence and Plaintiff's activities of daily living, the ALJ found that the Plaintiff's right knee complaints to be exaggerated. Tr. 24. Plaintiff told her counselor on August 18, 2015 that she had a long history of right knee pain, may require another surgery, and occasionally needed to use a walker. Tr. 663. On February 12, 2016, Plaintiff testified that she "normally use[s]" a walker that Dr. Joshi prescribed her. Tr. 49. Plaintiff testified that she usually used it when she went to appointments and things outside of her home, but not at home. *Id.* The medical record, however, does not support Plaintiff's statements. As the ALJ noted, Plaintiff never mentioned knee pain or surgery to a medical provider until October 2015. Plaintiff was prescribed a walker, but she did not use it as often as asserted. For example, Plaintiff indicated on May 11, 2014 that she used only handicap carts at stores, not a walker or any other aids. Tr. 239. Likewise, Plaintiff's daughter-in-law indicated on June 23, 2014 that Plaintiff used only handicap carts at stores and reading glasses, not a walker or any other aids. Tr. 247. Although Dr. Sushan Joshi prescribed Plaintiff a walker on July 3,

2014, tr. 555, he explained that Plaintiff had been "walking around fine" and had no shortness of breath, tr. 516. The record does not show that Plaintiff attended her appointments with a walker. *See* tr. 24. For example, in a report from a visit on October 28, 2015, Dr. Joshi did not say that Plaintiff used a walker. Tr. 589. In fact, Dr. Joshi said that Plaintiff's gait and station was "normal." *Id.* These facts constitute substantial evidence that Plaintiff's right knee osteoarthritis is non-severe.

The ALJ also noted that imaging in October 2015 and February 2016 showed only mild to moderate degenerative changes in Plaintiff's right knee with no acute abnormalities. Tr. 24; *see* tr. 639, 670. Yet Plaintiff alleged on February 19, 2016 that her knee pain interfered with her daily activities and prevented her from walking more than one block. Tr. 24; *see* tr. 667; *see also* tr. 50 (testifying that she could only walk for half a block before she had to stop due to shortness of breath). To the contrary, a physical examination that same day revealed some tenderness but normal strength and range of motion. Tr. 24; *see* tr. 669. Likewise, an examination on February 1, 2016 showed that Plaintiff's gait and station were normal, with swelling and tenderness of the left foot, not right knee. Tr. 24; *see* tr. 674–75.

The ALJ found that Plaintiff worked as a caregiver through February 2014 and admitted she did not quit for medical reasons. Tr. 24; *see* tr. 44 (testifying that she could not make it to work because she was "trying to help" her niece with childcare), 45, 46–47 (testifying that one of her clients found another caregiver because they did not get along), 55 (testifying that she could not do caregiving work on a full-time basis because there were never enough clients, she did not have transportation, and due to her left foot and right knee issues). In addition, Plaintiff cared for

her grandchildren, gardened, managed her personal care, performed household chores, prepared meals, and shopped. Tr. 24; *see* tr. 51–52, 234, 237, 457, 653, 657, 663.

Plaintiff argues that Dr. Jennings' February 2016 report shows that Plaintiff's right knee osteoarthritis is severe. Pl.'s Am. Br. 11, ECF No. 15; *see* tr. 671. Dr. Jennings wrote that there was no fracture, mild soft tissue swelling, degenerative changes, and "bone-on-bone collapse in medial compartment right knee with early medial tibial plateau bone loss," among other things. Tr. 671. Plaintiff failed to mention, however, that Dr. Jennings characterized Plaintiff's condition as "moderate in severity," although it was worsening and not responding to treatment. *See id.* Dr. Jennings suggested medication, icing, and a corticosteroid injection. *Id.*

Plaintiff also points to the new evidence she submitted to the Appeals Council after the ALJ's decision. Pl.'s Am. Br. 12–14, ECF No. 15; *see* Pl.'s Am. Br. Ex. A., 4–5, 41, 42–43, 44–46. This evidence does not demonstrate that Plaintiff's knee condition was severe for two reasons.

First, Plaintiff received corticosteroid injections for her right knee on March 25, 2016 and September 21, 2016. Pl.'s Am. Br. 12, ECF No. 15; *see* Ex. A, 41, 44. As of March 25, 2016, Plaintiff reported that her knee pain was "bearable but annoying." Ex. A, 44. After the first injection, Plaintiff reported 90% pain relief. Ex. A, 45. After the second injection, Plaintiff had nearly 100% pain relief. Ex. A, 43. Dr. Jennings also told Plaintiff that she would "eventually" need a right total knee arthroplasty. *Id.* As Defendant correctly points out, Plaintiff reported no knee pain during a follow-up visit between the two injections on May 5, 2016. Def.'s Br. 9, ECF No 14; *see* Ex. A, 32–37. These reports show that Plaintiff's knee pain is treatable.

Second, Plaintiff's condition appears to have worsened as of November 2016. *See* Ex. A, 4. However, the ALJ issued her decision in April 2016, and the report does not, as Plaintiff argues, "show that [Plaintiff's] knee condition [was] 'severe' from October of 2015 to November of 2016." *See* Pl.'s Am. Br. 13, ECF No. 15. Therefore, it is not relevant to Plaintiff's claim. Moreover, this Court agrees with Defendant that even if the ALJ erred, Plaintiff has failed to demonstrate any harm.

In sum, the ALJ provided specific reasons supported by substantial evidence in determining that Plaintiff's right knee osteoarthritis was non-severe.

## II. Plaintiff's Credibility

An ALJ must consider a claimant's symptom testimony, including statements regarding pain and workplace limitations. *See* 20 CFR §§ 404.1529(a), 416.929(a). Where there is objective medical evidence in the record of an underlying impairment that could reasonably be expected to produce the pain or symptoms alleged and there is no affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of her symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

The ALJ "may consider a range of factors in assessing credibility." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter,* 504 F.3d at 1040. "If the ALJ's credibility finding is supported by substantial evidence in the record," this Court "may not engage in second-guessing," *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted), and "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation," *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) (citation omitted).

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably by expected to cause some of the alleged symptoms," but that her "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 28. The ALJ focused on Plaintiff's work activity, daily activities, chronic heart failure, COPD, hypertension, diabetes, obesity, and mental health. Tr. 28–31. Each are addressed in turn below.

First, the ALJ addressed Plaintiff's work and daily activities. Tr. 28. An ALJ may rely on daily activities to form the basis of an adverse credibility determination if those activities contradict a plaintiff's testimony or involve the performance of physical functions that are transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ found that Plaintiff's alleged onset date is September 22, 2012, but that she had engaged in work

activity through February 2014. Tr. 28; *see* tr. 44–47, 210, 219. The ALJ acknowledged that Plaintiff's work activity does not amount to disqualifying substantial gainful activity, but explained that Plaintiff's daily activities, including employment activity, are more significant than reported. Tr. 28.

For instance, the Plaintiff testified that she quit work in 2013 because she wanted to provide childcare for her nieces and nephews.[2] Tr. 28; *see* tr. 44. In another area of her testimony, Plaintiff admitted her medical conditions did not currently prevent her from performing her past work as a caregiver. Rather, she was unable to perform that work on a full-time basis due to a lack of available work and a lack of transportation to and from work." Tr. 28.When asked specifically if there were any medical reasons for her inability to work as a caregiver, Plaintiff said she could not work on a full-time basis and, after further questioning, discussed the fracture in her left foot and lack of cartilage in her right knee. Tr. 55. Plaintiff testified that she could perform light exertional work if it primarily involved sitting. Tr. 28; *see* tr. 50–51. Indeed, when asked if she would be able to work at a job where she could sit most of the time and did not have to lift more than twenty pounds, Plaintiff responded, "I would think so." Tr. 50–51. There is substantial evidence in the record to support the ALJ's finding that Plaintiff appears to have quit her work as a caregiver for several reasons unrelated to her alleged disability.

The ALJ next discussed Plaintiff's history of chronic heart failure and COPD. Tr. 28. The ALJ is correct that Plaintiff reported to the emergency room with allegations of chest pain on

---

[2] The ALJ slightly misstated this fact. As previously stated in this Opinion, Plaintiff testified that she could not make it to work because she was trying to help her niece by taking care of her niece's sons while she and her husband were in court. Tr. 44. Therefore, Plaintiff was providing childcare for her great nephews. Regardless, the ALJ's reasoning still applies.

9 – OPINION AND ORDER

four occasions, but examination and testing showed no significant abnormalities. Tr. 28–29; *see* tr. 427–31, 424–25, 513–14, 571–71. The ALJ is also correct that Plaintiff's treating provider said she was doing well with respect to her chronic heart failure as of February 1, 2016. Tr. 29; *see* 672.

Regarding Plaintiff's COPD, the ALJ correctly stated that Plaintiff continued to smoke despite being told to quit. Tr. 29; *see* tr. 56, 318, 326, 364, 395, 513, 551, 587, 672. In addition, Plaintiff said she rarely needed to use her COPD medication, tr. 29; *see* tr. 606 (reporting on November 7, 2014 that she had been taking her COPD medication "once [in] a while," and reported no awakening during the night), and cited only hip and knee pain as the reason she could not to do much physical work, tr. 29; *see* 655. However, the ALJ failed to mention Plaintiff's testimony that she cut her smoking by "about half," *see* tr. 56, or that when she cited only hip and knee pain on October 21, 2015 she was speaking to a counselor, not testifying or seeking medical advice, *see* 655. Even when considering these additional facts, however, the ALJ provided sufficient reasons supported by substantial evidence to conclude that Plaintiff's allegations of her COPD symptoms are not consistent with the medical evidence of record.

The ALJ then found that Plaintiff's hypertension and diabetes were largely uncontrolled due to her failure to take medication. Tr. 29; *see* tr. 288, 291, 321. The ALJ acknowledged that Plaintiff's failure to take medication does not suggest that her alleged medical conditions and symptoms are nonexistent. Tr. 30. However, the ALJ posited that it does suggest that Plaintiff has not accurately reported the intensity, persistency, and severity of her symptoms. *Id.* "[The Ninth Circuit has] long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed

course of treatment." *Molina*, 674 F.3d at 1113 (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir.)) (internal quotation marks omitted).

Here, Plaintiff points to no legitimate reason for failing to follow a prescribed course of treatment. Plaintiff claimed that she did not take her medication for many reasons, including lack of funds, tr. 288, a belief that it could not be combined with her inhaler, tr. 291, blurred vision, tr. 587, and, at other times, for no reason at all, tr. 283, 400. On November 27, 2013, Dr. Greg Schandelmeier, M.D., wrote that Plaintiff was noncompliant with labs and most of her medications, and that she made no effort to work with pharmaceutical patient assistance programs to obtain medications. Tr. 321. This demonstrates that Plaintiff was generally noncompliant and made no effort to seek financial assistance.

Furthermore, as the ALJ pointed out, Plaintiff was able to pay for cigarettes during that time. Tr. 29; *see* tr. 56, 318, 326, 364, 395, 513, 551, 587, 672. Plaintiff's eye examinations also did not confirm her blurred vision complaint, and her ophthalmologist said she had no eye-related complications. Tr. 584–85. Therefore, the ALJ provided a legitimate and specific reason supported by substantial evidence for finding the Plaintiff was not fully credible.

The ALJ also discussed Plaintiff's obesity, concluding that Plaintiff's activities of daily living undermined her assertions regarding her symptoms. Tr. 30. The ALJ found that Plaintiff was able to care for her young grandchildren, *id.*; *see* tr. 234 (stating that she played with her granddaughters, watched them for a few hours at a time, and cooked for them),[3] and

---

[3] The ALJ also cited to parts of the record where Plaintiff referred to her ex-boyfriend's grandchildren, with whom she lived previously and helped care for after her alleged onset date. *See* tr. 457 (reporting on December 5, 2012 that she lived with her boyfriend and his four-year-old grandson, whom she helped raise), tr. 653 (reporting on November 4, 2015 that she missed "the children," one of whom she helped raise), tr. 657 (reporting on October 7, 2015 that she helped raise her ex-boyfriend's grandchildren for five years prior), and tr. 663 (reporting on August

independently managed her household (including preparing meals, performing chores, and shopping), tr. 30; *see* tr. 51–52, 234, 663. Plaintiff testified that she provided "very little" care for her three granddaughters, with whom she was living at the time. Tr. 43. However, Plaintiff has, by her own accounts, taken care of her grandchildren and her ex-boyfriend's grandchildren throughout the relevant period. *See* tr. 234, 457, 653, 657, 663.

Plaintiff also played bingo, attended family functions, and swam on a regular basis. Tr. 237. Furthermore, Plaintiff alleged on May 22, 2014 that she could not climb stairs. Tr. 238. Yet Plaintiff admitted on December 5, 2012— approximately three months after her alleged onset date—that she walked up and down the stairs to her second story apartment up to three times per day, albeit stopping midway for a break. Tr. 30; *see* 447. In addition, State agency medical consultants determined that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, stand or walk for about six hours during an eight-hour work day, and could sit for about six hours in an eight-hour work day. Tr. 72, 81–82, 93, 103. The consultants also indicated that Plaintiff could occasionally climb ramps, stairs, ladders, ropes, and scaffolds, occasionally stoop, and was unlimited in her ability to kneel, crouch, and crawl. Tr. 73, 82, 93–94, 103–04. Substantial evidence exists in the record to support the ALJ's finding that Plaintiff's activities of daily living undermined her obesity-related assertions.

Lastly, the ALJ addressed Plaintiff's mental health impairments. Tr. 30–31. Plaintiff alleged symptoms of depression, loneliness, worthlessness, fluctuating appetite, difficulty sleeping, low energy, panic attacks, and diminished concentration. Tr. 402, 452, 651, 653, 656, 661, 662. Plaintiff was diagnosed with depression. Tr. 321. After reviewing the evidence, the

---

18, 2015 that she lived with her ex-boyfriend, his daughter, and her three children, who, she helped care for by cooking, cleaning, and "acting as a servant" for them).

ALJ again determined that Plaintiff's inconsistent reports suggest that the intensity, persistence, and severity of her symptoms may not be accurate. Tr. 31.

For example, Plaintiff testified that she did not notice a difference in her symptoms when taking anti-depressant medication and that she stopped taking it due to side effects. Tr. 31; *see* tr. 52. However, Plaintiff's mental health records showed that she responded well to medication and counseling. Tr. 330, 595, 597, 600, 601, 603, 609. Plaintiff reported improved mood and increased activity, tr. 338, 340, 564, and eventually stopped taking her medication because she was making progress in therapy and did not think she needed it, tr. 663. In August 2015, Plaintiff said her symptoms returned and she reengaged in therapy. Tr. 662–63. A counseling session revealed, however, that Plaintiff's mental status was within normal limits, she reported a "pretty good" mood, and her symptoms did not appear to have worsened even without medication and therapy. Tr. 663.

The ALJ also noted that Plaintiff did not allege mental health impairments in her disability applications or provide any related evidence. Tr. 31. Still, the ALJ acknowledged the evidence received at the hearing level and accounted for Plaintiff's depression by limiting her to simple and routine tasks. *Id.* The ALJ gave greater weight to the statements Plaintiff made in pursuit of medical treatment as opposed to disability benefits and stated that her contemporaneous reports were consistent with her mental health provider's observations and the record as a whole. *Id.*

Given the foregoing facts, the ALJ provided clear and convincing reasons supported by substantial evidence in the record for discounting Plaintiff's credibility.

### III. Lay Testimony

Lastly, Plaintiff argues that the ALJ failed to give valid reasons for rejecting the lay testimony of Plaintiff's daughter-in-law, Sasha M. Pl.'s Am. Br. 14, ECF No. 15. Generally, "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citation omitted); *see also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000) ("[A]n ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members." (citation omitted)). The reasons proffered by the ALJ for rejecting lay testimony must be germane *and* specific. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). In other words, bias "in the abstract," such as a familial relationship, is not per se a germane reason to discredit a lay witness. *Dale v. Colvin*, 823 F.3d 941, 944–45 (9th Cir. 2016) (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)). An ALJ's failure to articulate such a germane reason is nonetheless harmless if that "testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Molina*, 674 F.3d at 1117.

Here, Sasha M. stated that she had known Plaintiff for ten years and spent every day with her. Tr. 241. Sasha M. stated that Plaintiff couldn't walk, stand, or kneel for long periods of time, had a hard time catching her breath, and could not walk up many stairs. *Id.* She attributed Plaintiff's limitations to her heart, COPD, arthritis, and learning disability. *Id.* Sasha M.

described Plaintiff's daily activities, said she could not watch her grandchildren, or at least needed help doing so, and explained that her COPD and sleep apnea affected her breathing. Tr. 242–45. Sasha M. further stated that Plaintiff had to sit to dress, brush her hair, and shave, and that she did these tasks very slowly. Tr. 242. Sasha M. also stated that Plaintiff had to sit while she prepared meals, and that she cleaned and did laundry slowly as well. Tr. 243.

The ALJ concluded that Sasha M.'s third-party function report was generally consistent with Plaintiff's reports of her symptoms, limitations, and activities of daily living. Tr. 27. However, the ALJ reasoned that Sasha M. was sympathetic to Plaintiff and had a natural tendency to agree with her reported limitations due to their relationship. Tr. 27–28. The ALJ also stated that even if she accepted Sasha M.'s testimony, it is not indicative of an inability to sustain work activity. Tr. 28.

Sasha M.'s relation to and affection for Plaintiff is not a germane reason to discredit Sasha M.'s testimony in and of itself. *See Dale*, 823 F.3d at 944–45 (citation omitted). However, the ALJ is correct that Sasha M.'s statements, even if taken as true, would not demonstrate that Plaintiff is unable to work. As previously stated, the ALJ already accounted for Plaintiff's chronic heart failure, COPD, obesity, diabetes, and hypertension and therefore limited her activities. *See* tr. 30; *see also* tr. 59. Furthermore, Defendant is correct that Sasha M.'s statements do not describe any limitations that Plaintiff had not already alleged, *see* Def.'s Br. 8, ECF No. 14,[4] and the ALJ's reasons for rejecting Plaintiff's testimony "apply equally well to the lay witness testimony." *See Molina*, 674 F.3d at 1117.

---

[4] Although the ALJ neglected to point it out, Defendant is also correct that Sasha M. defaulted to first-person multiple times throughout her report. *See* Def.'s Br. 7–8, ECF No. 14. Sasha M. stated that Plaintiff kept score for friends' softball games "when *I* can," tr. 245 (emphasis added), "*I* can only lift twenty pounds," "squatting hurts *my* knees," "standing for long periods hurt[s] *my* knees," "*I* can't catch my breath," and "*my* memory," and "*I* forget

15 – OPINION AND ORDER

The ALJ's error, if any, in rejecting Sasha M.'s testimony is harmless.

## CONCLUSION

For these reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 20th day of November, 2018.

                                              s/ Michael J. McShane
                                              Michael J. McShane
                                              United States District Judge

---

things," tr. 246 (emphasis added). Therefore, even if the ALJ did not err in discounting Sasha M.'s testimony due to her relationship with Plaintiff, her report would likely be viewed as non-credible.